1
2
3
4
5
6
7
8                      **UNITED STATES DISTRICT COURT**

9                     **CENTRAL DISTRICT OF CALIFORNIA**

10

11  ZINA STEAGALL,                )      NO. EDCV 11-01389 SS
                                  )
12              Plaintiff,        )
                                  )
13         v.                     )
                                  )      **MEMORANDUM DECISION AND ORDER**
14  MICHAEL J. ASTRUE,            )
    Commissioner of the Social    )
15  Security Administration       )
                                  )
16              Defendant.        )
    _____)

17

18                              **I.**

19                          **INTRODUCTION**

20

21       Plaintiff Zina Steagall ("Plaintiff") seeks review of the decision

22  by  the  Commissioner  of  Social  Security  Administration  ("the

23  Commissioner") to deny her disability benefits.  She filed a Complaint

24  on September 9, 2011.  The parties consented to the jurisdiction of the

25  undersigned United States Magistrate Judge, pursuant to 28 U.S.C. §

26  636(c).  For the reasons stated below, the Commissioner's decision is

27  AFFIRMED.

28  \\

## II.

### PROCEDURAL HISTORY

Plaintiff filed a previous application for disability insurance benefits under Title XVI of the Social Security Act, which was denied on October 16, 1997. (Administrative Record "AR" 134). Plaintiff filed the current application for supplemental security income on March 27, 2007, alleging a disability onset date of March 27, 2007. (AR 601). Plaintiff based her claim on back pain. (AR 138). The Social Security Administration (the "Agency") denied Plaintiff's claim on June 15, 2007. (AR 59). The denial was upheld upon reconsideration on August 10, 2007. (AR 64).

Plaintiff then requested a hearing, (AR 70), which was held before an Administrative Law Judge ("ALJ"). (AR 28-56). Plaintiff appeared and was represented by counsel. (AR 28). A vocational expert ("VE"), Joseph Mooney, testified at a separate hearing on March 5, 2009. (AR 23-27).

On May 19, 2009, the ALJ issued a decision denying benefits. (AR 8-20). Plaintiff sought review of the ALJ's decision before the Appeals Council, (AR 21), which denied her request on July 31, 2009. (AR 1-3). In 2009, Plaintiff sought review by this Court by filing Steagall v. Astrue, Case No. EDCV 09-1601 SS. (AR 566-67). On April 4, 2010, this Court remanded for further administrative proceedings, to obtain supplemental testimony from the VE. (AR 566-69). The Appeals Council expanded on the grounds for remand and ordered that a subsequent claim

be associated and consolidated with this case on June 10, 2010.  (AR 572-73).

ALJ Sharilyn Hopson held a third hearing in this case on April 13, 2011.  (AR 496-549).  The ALJ heard testimony from Plaintiff; a medical expert, Dr. Jeremy Landau; a lay witness, Cynthia Quinn, Plaintiff's aunt; and a vocational expert, David Rinehart.  (Id.).  Plaintiff was represented by counsel.  (AR 496).  On June 17, 2011, the ALJ denied Plaintiff's claim, finding Plaintiff able to perform a limited range of light work.  (AR 457-468).  Plaintiff did not seek review from the Appeals Council.  The ALJ's decision therefore became the final decision of the Agency.  Plaintiff commenced this action on August 31, 2011. (Compl. 1).

### III.

### FACTUAL BACKGROUND

Plaintiff was born on July 13, 1967 and was forty-three years old at the time of the last hearing.  (AR 133).  Her highest level of education is eleventh grade.  (AR 32).  Plaintiff speaks, reads and writes English.  (AR 137).

**A.   Plaintiff's Medical History**

On August 20, 2006, Plaintiff was admitted to Hemet Valley Medical Center for complaints of chest pain, headaches and hypertension.  (AR 229).  Plaintiff injured her neck and lower back in a car accident on December 7, 2006.  (AR 197-98).  Plaintiff was treated for non-bleeding

3

hemorrhoids, and there was evidence of a past rectal bleeding on December 21, 2006. (AR 219). On May 19, 2007, Plaintiff went to the emergency room for headaches, but a CT scan was normal. (AR 278). Plaintiff went to the emergency room on November 29, 2007 for right shoulder pain following a car accident on November 17, 2007, but the X-ray was normal. (AR 276).

On May 22, 2007, Dr. Mohammad Khayali conducted a neurological consultative examination of Plaintiff after she was admitted to the hospital complaining of headaches and a sore throat. (AR 284-85). Dr. Khayali diagnosed nonspecific headaches and recommended that Plaintiff cease taking antibiotics. (Id.).

On December 6, 2007, Dr. Milind Panse, an orthopedist, examined Plaintiff for right shoulder pain. (AR 357). Dr. Panse's physician's assistant, Amber Hollenbeck, diagnosed bursitis and tendinitis. (AR 358). Plaintiff declined a cortisone injection. (AR 358). Plaintiff followed up with Amber Hollenbeck, who prescribed eight sessions of physical therapy, as well as ice and heat therapy. (AR 356).

Plaintiff was admitted to Hemet Valley Medical Center for headaches and hypertension on August 29, 2008. (AR 298). The doctors suspected that "rebound," or withdrawal, and "possible opioid dependency" caused her headaches because Plaintiff "continued to ask for Dilaudid frequently." (Id.). Plaintiff complained of back and neck pain, but X-rays were normal. (AR 310-11).

4

On September 1, 2008, Dr. Khayali conducted a neurological examination after Plaintiff was admitted to the hospital for headaches. (AR 303-04). He determined the cause to be rebound from narcotic dependency and hypertension. (Id.). He recommended pain management and continued analgesics. (Id.).

Plaintiff saw Dr. Kurt Frauenpreis, her primary care physician, for complaints of hypertension and headaches on September 17, 2008. (AR 322). He diagnosed poorly controlled high blood pressure and opioid withdrawal. (Id.). On October 24, 2008, Plaintiff followed up with Dr. Humayun Qureshi, a cardiologist, who diagnosed improvement with her blood pressure. (AR 365-67). Dr. Qureshi also determined that Plaintiff had suffered tachycardia in the hospital, but it passed quickly. (Id.). She saw a nephrologist, Dr. Ishak, on January 13, 2009, who determined that her blood pressure was under control. (AR 653).

Plaintiff had carpal tunnel release surgery on her left hand on September 25, 2009. (AR 735-742). Further examination showed increased function in her left hand. (AR 735). Plaintiff was hospitalized for abdominal pain on March 2, 2009. (AR 439). She was diagnosed as having diverticulitis. (AR 440).

On February 8, 2011, Dr. Khayali conducted a neurological consultative examination. (AR 854-56). Plaintiff's strength and gait were both normal. (Id.). Plaintiff still had mild to borderline carpal tunnel on the left and mild carpal tunnel syndrome on the right. (Id.). Both sides had improved. (Id.). He recommended that Plaintiff decrease

pain medication and use more non-steroidal anti-inflammatory medications. (Id.).

**B.   Consultative Examinations**

On May 25, 2007, Dr. Sabourin conducted an orthopedic consultation that revealed no nerve damage, but Plaintiff was "not completely cooperative." (AR 260-63). Dr. Sabourin observed that Plaintiff "refuses to move the back stating it will hurt. She is noted to be able to sit on the examination with her legs straight out in front of her." (AR 261). She also refused to move her neck or shoulders. (AR 261-62). Dr. Sabourin noted that there "is no deformity, scar, tenderness, spasm, swelling or warmth in the neck" and "no tenderness, warmth, crepitus, instability, or swelling" in the shoulders. (Id.). Dr. Sabourin also wrote that "[e]xamination reveals giving way with every muscle tested in the upper and lower extremities." (AR 262). He found that Plaintiff could lift or carry 20 pounds occasionally and 10 pounds frequently. (AR 263). She could stand and walk for six hours of an eight hour workday and sit for six hours. She has no manipulative limitations. (Id.).

On December 3, 2008, Plaintiff received a complete internal medicine evaluation from Dr. Gabriel T. Fabella, which showed hypertension, limited range of motion for the right shoulder and atypical sharp pain. (AR 389-94). She had no tenderness in the back, and she had a normal range of motion in the neck. (Id.). Dr. Fabella noted that Plaintiff drove herself to the office. (AR 389).

On October 15, 2009, Plaintiff received a complete internal medicine evaluation from Dr. Nizar Salek, who determined that Plaintiff had normal range of motion in both shoulders and her neck. (AR 716-23). Plaintiff walked normally, had no trouble getting in or out of her chair and did not complain of headaches. (Id.). Plaintiff's hands had scars from her recent carpal tunnel surgery, but there was no evidence of tenderness, and range of motion was normal. (Id.).

A blood test in September 2010 came back positive for Phencyclidine but negative for Plaintiff's prescribed painkillers. (AR 752). The laboratory also noted that "Phencyclidine is a DEA Schedule II controlled substance with no known licit pharmaceutical applications."[1] (Id.). The laboratory noted that the lack of analgesics "is inconsistent with the reported prescription." (Id.). A January 2011 blood test was again negative for Plaintiff's prescribed painkillers. (AR 747).

C.   **Non-Consultative Examinations**

On June 12, 2007, Dr. M. H. Yee reviewed Plaintiff's records and found that she suffered from a cervical strain, a lumbar strain and hypertension. (AR 266-71). She also complained of having headaches about once a month when she did not take her hypertension medicine. (AR 268). Dr. Yee's residual functional capacity ("RFC") assessment recommended that Plaintiff could lift ten pounds frequently and twenty pounds occasionally; she could stand and/or walk about six hours in an

---

[1] Phencyclidine is the illegal hallucinogen commonly known as PCP. U.S. v. Barnett, 667 F.2d 835, 838 (9th Cir. 1982).

eight-hour workday; she could sit about six hours in an eight-hour workday; she had no limitations on pushing or pulling; she should never climb; and she should avoid concentrated exposure to hazards like machinery and heights. (Id.). Otherwise, she was capable of a light level of exertion. (AR 273). On August 6, 2007, Dr. J. Hartman confirmed Dr. Yee's analysis and Defendant's first denial of benefits. (AR 274).

On October 26, 2009, Dr. A. Lizarraras reviewed Plaintiff's record. (AR 727-34). His RFC assessment was identical to Dr. Yee's, except that he removed the restriction on exposure to hazards. (Id.). Dr. Lizarraras found Plaintiff's allegations credible except as to the persistence, intensity and functional limitations. (AR 732, 734).

**D.   Plaintiff's Testimony**

Plaintiff testified on October 31, 2008. (AR 30). She was 41 years old at the time of the hearing, weighed 224 pounds and was 5'8". (AR 32). Her highest education level was eleventh grade. (Id.). She testified that she last worked in 2000 as a full-time childcare provider. (AR 33). She noted that she was in car accidents in December 2006 and November 2007. (AR 33, 47). As a result, she says she has back pain that spreads from her lower back to her neck. (AR 45-46).

Plaintiff also claims to suffer from headaches, numbness in her extremities and high blood pressure. (AR 34). She stated that she tires easily from moving around rapidly. (Id.). She testified to having tachycardia, pain in her entire body and photophobia. (AR 34-

37).  She claimed to lie down four to six hours a day.  (AR 37).   She said that she does not drive, do laundry or shop.  (AR 38-39).   She described a burning pain in her upper thigh, a swollen right ankle and chest pain.  (AR 39-42).  She rated her leg pain as seven out of ten.  (AR 40).  She rated her chest pain as eight out of ten, lasting for thirty minutes at a time.  (AR 42).  She testified that nitroglycerin helps with the chest pain but makes the headaches worse.  (AR 42-43).  She said that her pain medication makes her drowsy.  (AR 43).

Additionally, Plaintiff claimed that she cannot sit or stand for more than ten minutes.  (AR 45).  She testified that she has bursitis in her right shoulder, which causes pain and prevents her from lifting more than ten pounds.  (AR 46-48).  She said she is able to walk less than half a block without suffering pain and fatigue.  (AR 49).   She testified that she cannot climb stairs, bend over, climb ladders, kneel or crawl because of her back.  (AR 50).  She noted that cold makes her ankle hurt.  (AR 50-51).  She testified that humidity makes her body ache.  (AR 51).   She first received a drivers' license in 2006 but claimed to have stopped driving several years before the hearing.  (AR 52-53).  She noted that she lived with her wife and their four children.  (AR 53-54).  She said her income consists of $588 per month in food stamps.  (AR 54).  She also says she collects Social Security for her ten-year-old daughter, who has cortical blindness, and survivors' benefits, which her seventeen-year-old son began receiving when Plaintiff's aunt passed away.  (AR 54-55).

At her second ALJ hearing on April 13, 2011, Plaintiff testified that she was self-employed braiding hair until 2009, when her hands

9

could no longer do the work. (AR 501). She stated that she braided three heads per day, two days out of the week, charging between $50 and $175, depending on the service. (AR 502). The ALJ calculated an income of at least $1200 per month, but Plaintiff testified that she made close to $500 per month. (Id.). She did not know exactly how much she made and did not file a tax return. (AR 503).

Next, Plaintiff claimed to have stopped drinking alcohol at 18 and to not using drugs. (AR 506-07). She smokes cigarettes. (AR 507). Plaintiff testified that most days, she goes to bed around 10:00 p.m. and wakes up around 11:30 a.m. or noon. (AR 514). She complained of being drowsy from her pain medication. (AR 509). She noted that she takes Norco six times per day. (Id.). She said she takes Soma to relax her muscles. (AR 508-10). She said that her aunt bathes her and cooks. (AR 510-11). She testified that sometimes she can use the bathroom on her own, and sometimes she gets help from her aunt or her daughter. (AR 511). She observed that she has stopped going to church. (AR 512). Plaintiff said she reads the Bible sometimes and does not use the computer. (AR 513). She testified that she had carpal tunnel surgery, but it did not help. (AR 515). She noted that she had seen an acupuncturist for her back problems. (AR 516). She claimed to have severe shoulder pain all the time. (AR 531-32). She rated the pain in her hand at a ten out of ten before taking painkillers and an eight out of ten afterwards. (AR 535-36). She claimed that her pain was ten out of ten while testifying. (AR 535).

**E.    Vocational Expert's Testimony**

The first vocational expert ("VE") testified on March 5, 2009, (AR 24-27), but this Court remanded for the ALJ to ask the VE a hypothetical that included all of Plaintiff's limitations.  (AR 566-69).

David Rinehart testified at the hearing on April 13, 2011 as a VE. (AR 544-48).  After the VE heard Plaintiff's testimony and reviewed Plaintiff's file, the ALJ posed six hypotheticals to the VE.  (AR 546-48).  The ALJ gave the first hypothetical as follows:

> [a person] who is 39 years old, has an 11th-grade education, is literate and speaks English, and can perform the demands of work within the following RFC.  She can stand, walk or sit six hours out of an eight-hour day with normal breaks such as every two hours.  She can lift and/or carry 10 pounds frequently, 20 pounds occasionally.  She can occasionally stoop and bend.  She can climb stairs but she can not climb ladders, work at heights or balance.  She can do occasional neck motion but should avoid extremes of motion.  She can not work above shoulder level on the right, [sic] there is no limitation on the left.  And the work environment should be air-conditioned for temperature control.

(AR 546-47).  Given this hypothetical, the VE found that such a person could perform unskilled, entry-level jobs like information clerk, fund raiser or inspector and hand packager.  (AR 547).

1    The second hypothetical was identical to the first, except with the
2    additional restrictions that the person do occasional neck motion, avoid
3    extremes of neck motion, hold the head in a comfortable position at
4    other times and maintain a fixed head position for 15 to 30 minutes at
5    a time occasionally.  (AR 547).  The VE determined that the same jobs
6    would still be available.  (<u>Id.</u>).

7

8    The ALJ's third hypothetical added that the person not do forceful
9    gripping, grasping or twisting, but she could do up to frequent fine
10   manipulation such as keyboarding, and gross manipulation such as opening
11   doors and carrying files.  (AR 548).  The VE responded that she would
12   still be able to do the same jobs.  (<u>Id.</u>).

13

14   The ALJ's fourth hypothetical added the person had to be able to
15   wear a wrist brace.  (<u>Id.</u>).  The VE testified that she would still be
16   able to do the same jobs.  (<u>Id.</u>).

17

18   The ALJ's fifth hypothetical added that the person be off task 20%
19   of the time due to drowsiness and pain.  (<u>Id.</u>).  With that change, the
20   VE determined that the person could not maintain competitive employment.
21   (<u>Id.</u>).

22

23   The ALJ's sixth hypothetical asked if the person would still be
24   able to work if she were absent three or more days a month because of
25   medications and pain.  (<u>Id.</u>).  The VE testified that, under those
26   circumstances, Plaintiff would not be able to work.  (<u>Id.</u>).

27

28

**F.   Lay Witness Testimony**


Plaintiff's aunt, Cynthia Quinn, also testified at the March 5, 2009 hearing.  (AR 538-44).  She testified that she takes care of Plaintiff and Plaintiff's daughters.  (AR 539).  She said she gives Plaintiff breakfast and helps her bathe and dress.  (Id.).  She noted that Plaintiff was getting worse because her feet bother her and has lost dexterity in her hands.  (Id.).  She testified that she takes Plaintiff outside, sits with her, and gets her ready for bed.  (AR 540). Ms. Quinn noted that her 29-year-old daughter also helps take care of Plaintiff.  (Id.).  Ms. Quinn stated that she makes dinner for Plaintiff and assists her in taking medications.  (AR 540-41).  She observed that Plaintiff is often in pain and has "good and bad days."  (AR 542).  Ms. Quinn testified that Plaintiff stays in bed most of the day but is not necessarily asleep.  (Id.).  She stated that Plaintiff gets up at about 11:30 a.m.  (AR 544).  She reported that Plaintiff might sit for about an hour on the couch and then return to bed.  (Id.).


**IV.**

**THE FIVE-STEP SEQUENTIAL EVALUATION PROCESS**


To qualify for disability benefits, a claimant must demonstrate  a medically determinable physical or mental impairment that prevents him from engaging in substantial gainful activity[2] and that is expected to result in death or to last for a continuous period of at least twelve

---

[2]   Substantial gainful activity means work that involves doing significant and productive physical or mental duties and is done for pay or profit.  20 C.F.R. §§ 404.1510, 416.910.

months.  Reddick v. Chater, 157 F.3d 715, 721 (9th Cir. 1998) (citing 42 U.S.C. § 423(d)(1)(A)).  The impairment must render the claimant incapable of performing the work he previously performed and incapable of performing any other substantial gainful employment that exists in the national economy.  Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999) (citing 42 U.S.C. § 423(d)(2)(A)).

    To decide if a claimant is entitled to benefits, an ALJ conducts a five-step inquiry.  20 C.F.R. §§ 404.1520, 416.920.  The steps are:

  (1) Is the claimant presently engaged in substantial gainful activity?  If so, the claimant is found not disabled.  If not, proceed to step two.

  (2) Is the claimant's impairment severe?  If not, the claimant is found not disabled.  If so, proceed to step three.

  (3) Does the claimant's impairment meet or equal one of a list of specific impairments described in 20 C.F.R. Part 404, Subpart P, Appendix 1?  If so, the claimant is found disabled.  If not, proceed to step four.

  (4) Is the claimant capable of performing his past work?  If so, the claimant is found not disabled.  If not, proceed to step five.

  (5) Is the claimant able to do any other work?  If not, the claimant is found disabled.  If so, the claimant is found not disabled.

14

1  _Tackett_, 180 F.3d at 1098–99; _see also_ _Bustamante v. Massanari_, 262 F.3d

2  949, 953–54 (9th Cir. 2001) (citing _Tackett_); 20 C.F.R. §§ 404.1520(b)–

3  404.1520(f)(1) & 416.920(b)–416.920(f)(1).

4

5  The claimant has the burden of proof at steps one through four, and

6  the Commissioner has the burden of proof at step five. _Bustamante_, 262

7  F.3d at 953–54 (citing _Tackett_). Additionally, the ALJ has an

8  affirmative duty to assist the claimant in developing the record at

9  every step of the inquiry. _Id._ at 954. If, at step four, the claimant

10 meets his burden of establishing an inability to perform past work, the

11 Commissioner must show that the claimant can perform some other work

12 that exists in "significant numbers" in the national economy, taking

13 into account the claimant's residual functional capacity,[3] age,

14 education, and work experience. _Tackett_, 180 F.3d at 1098, 1100;

15 _Reddick_, 157 F.3d at 721; 20 C.F.R. §§ 404.1520(f)(1), 416.920(f)(1).

16 The Commissioner may do so by the testimony of a vocational expert or by

17 reference to the Medical-Vocational Guidelines appearing in 20 C.F.R.

18 Part 404, Subpart P, Appendix 2 (commonly known as "the Grids").

19 _Osenbrock v. Apfel_, 240 F.3d 1157, 1162 (9th Cir. 2001) (citing

20 _Tackett_). When a claimant has both exertional (strength-related) and

21 nonexertional limitations, the Grids are inapplicable and the ALJ must

22 take the testimony of a vocational expert. _Moore v. Apfel_, 216 F.3d

23 864, 869 (9th Cir. 2000) (citing _Burkhart v. Bowen_, 856 F.2d 1335, 1340

24 (9th Cir. 1988)).

25

26

27    [3] Residual functional capacity is "what [one] can still do despite
[his] limitations" and represents an "assessment based upon all of the
28 relevant evidence." 20 C.F.R. §§ 404.1545(a), 416.945(a).

**V.**

**THE ALJ'S DECISION**

The ALJ employed the five-step sequential evaluation process and concluded that Plaintiff was not disabled within the meaning of the Social Security Act. (AR 459-68). At the first step, the ALJ observed that although Plaintiff's work as a hairdresser in 2008 and 2009 was indicative of the ability to work, there was not enough evidence to show that Plaintiff had engaged in substantial gainful activity. (AR 460). Thus, the ALJ concluded that Plaintiff had not engaged in substantial gainful activity at any time relevant to her decision. (Id.). At step two, she found that Plaintiff had the severe impairments of obesity; headaches; degenerative disc disease of the entire spine, consistent with age; treated hypertension; chronic kidney disease, stage two; diverticulosis with one attack of diverticulitis; right hemicolectomy for undetermined reason; right shoulder bursitis/tendinitis; and mild anemia. (Id.).

At the third step, the ALJ found that Plaintiff's impairments did not meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Id.). At step four, the ALJ considered the entire record in determining that Plaintiff had the RFC to perform a limited range of light exertion. (Id.). Specifically, the ALJ found that Plaintiff can

> lift and carry 20 pounds occasionally and 10 pounds frequently. She can stand and walk for 6 hours out of an 8-hour workday, and she can sit for 6 hours out of an 8-hour

16

1  workday with breaks every 2 hours.  She can occasionally stoop
2  and bend.  She can climb stairs, but she cannot climb ladders,
3  work at heights, or balance.  She can perform occasional neck
4  motion, but she should avoid extremes of motion.  Her head
5  should be held in a comfortable position at other times.  She
6  can maintain a fixed head position for 15-30 minutes at a
7  time, occasionally.  She cannot work above shoulder level on
8  the right; she has no limitations on the left.  Her work
9  environment should be air conditioned for temperature control.
10 After April 2009, she could not perform forceful gripping,
11 grasping or twisting, but she could do up to frequent fine
12 manipulation such as keyboarding, and gross manipulation such
13 as opening drawers and carrying files.  She can wear a wrist
14 brace as needed.

16 (AR 460-61).  The ALJ incorporated the limitations prescribed by the
17 non-consulting physician and found that Plaintiff could perform a
18 limited range of work at the light exertional level.  (AR 460-67).

20 Having addressed Plaintiff's functional limitations, the ALJ found
21 that Plaintiff was unable to perform any of her past work.  (AR 467).
22 Specifically, because the ALJ was unable to verify whether Plaintiff's
23 past relevant work as a hairdresser was substantial gainful activity,
24 the ALJ found that Plaintiff had no past relevant work.  (Id.).

26 Finally, at step five, the ALJ concluded that, based on Plaintiff's
27 RFC and the testimony of the VE, Plaintiff could work as an information
28 clerk, fund raiser or inspector/hand packager.  (AR 467-68).

Accordingly, the ALJ determined that Plaintiff was not disabled, as defined in the Social Security Act, at any time through the date of the decision.  (AR 468).

## VI.

### STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), a district court may review the Commissioner's decision to deny benefits.  The court may set aside the Commissioner's decision when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole. Aukland v. Massanari, 257 F.3d 1033, 1035 (9th Cir. 2001) (citing Tackett, 180 F.3d at 1097); Smolen v. Chater, 80 F.3d 1273, 1279 (9th Cir. 1996) (citing Fair v. Bowen, 885 F.2d 597, 601 (9th Cir. 1989)).

"Substantial evidence is more than a scintilla, but less than a preponderance." Reddick, 157 F.3d at 720 (citing Jamerson v. Chater, 112 F.3d 1064, 1066 (9th Cir. 1997)).  It is "relevant evidence which a reasonable person might accept as adequate to support a conclusion." Id. (citing Jamerson, 112 F.3d at 1066; Smolen, 80 F.3d at 1279).  To determine whether substantial evidence supports a finding, the court must "'consider the record as a whole, weighing both evidence that supports and evidence that detracts from the [Commissioner's] conclusion.'" Aukland, 257 F.3d at 1035 (citing Penny v. Sullivan, 2 F.3d 953, 956 (9th Cir. 1993)).  If the evidence can reasonably support either affirming or reversing that conclusion, the court may not substitute its judgment for that of the Commissioner. Reddick, 157 F.3d at 720-21 (citing Flaten v. Sec'y, 44 F.3d 1453, 1457 (9th Cir. 1995)).

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**VII.**

**DISCUSSION**

Plaintiff argues that the ALJ erred for two reasons: (1) the ALJ did not properly consider Plaintiff's testimony, (Mem. Supp. Compl. at 15-22), and (2) the ALJ did not properly consider Cynthia Quinn's testimony regarding the severity and functional limits of Plaintiff's pain. (Mem. Supp. Compl. at 7-15).  For the reasons discussed below, the Court disagrees with both of Plaintiff's contentions.

**A.   The ALJ Provided Clear And Convincing Reasons For Rejecting Plaintiff's Subjective Pain Testimony**

**1.   Plaintiff's Testimony**

Whenever an ALJ's disbelief of a plaintiff's testimony is a critical factor in a decision to deny benefits, as it is here, the ALJ must make explicit credibility findings.  Rashad v. Sullivan, 903 F.2d 1229, 1231 (9th Cir. 1990).  Unless there is affirmative evidence showing that the plaintiff is malingering, the ALJ's reasons for rejecting the plaintiff's testimony must be "clear and convincing." Lester v. Chater, 81 F.3d 821, 834 (9th Cir. 1995).  If a plaintiff offers evidence of a medical impairment that could reasonably be expected to produce pain, the ALJ may not require the degree of pain to be corroborated by objective medical evidence.  Bunnell v. Sullivan, 947 F.2d 341, 346-47 (9th Cir. 1991) (en banc).

\\

\\

19

1    An ALJ can, however, reject plaintiff's testimony regarding the
2  severity of her symptoms if she points to clear and convincing reasons
3  for doing so.  See Smolen, 80 F.3d at 1283-84.  To determine whether a
4  claimant's testimony regarding the severity of her symptoms is credible,
5  the ALJ may consider, among other things, the following evidence: (1)
6  ordinary techniques of credibility evaluation, such as the claimant's
7  reputation for lying, prior inconsistent statements concerning the
8  symptoms and other testimony by the claimant that appears less than
9  candid; (2) unexplained or inadequately explained failure to seek
10 treatment or to follow a prescribed course of treatment; and (3) the
11 claimant's daily activities.  Id. at 1284.  If the ALJ's credibility
12 finding is supported by substantial evidence in the record, the court
13 may not engage in second-guessing.  Id.

14

15   Here, the ALJ did not explicitly find that Plaintiff was
16 malingering.  (AR 460-67).  The ALJ found that Plaintiff had a severe
17 impairment likely to produce some pain.  (AR 460-1).  The ALJ found (1)
18 Plaintiff's  headaches were caused by drug abuse, (2) her back pain was
19 not linked to any significant medical findings, (3) her hypertension and
20 kidney disease were now controlled, (4) she had not sought treatment for
21 her right shoulder bursitis recently, (5) her complaints of chest pain
22 were unsubstantiated except for mild sinus tachycardia and (6) her
23 carpal tunnel release improved her hands' functionality more than she
24 admitted.  (AR 465).  The ALJ determined that Plaintiff's "statements
25 concerning the intensity, persistence and limiting effects of these
26 symptoms [were] not credible to the extent that they [were] inconsistent
27 with the above residual functional capacity assessment." (AR 462).  The
28 ALJ gave several specific, clear and convincing reasons for rejecting

Plaintiff's subjective complaints including medical records that do not support Plaintiff's claims, Plaintiff's inconsistent statements and Plaintiff's questionable conduct.  (Id.).

In this case, the ALJ had clear and convincing reasons to discredit Plaintiff's excess pain testimony.  First, the ALJ rejected Plaintiff's claim of headaches because they resulted from narcotic rebound and were manageable without strong pain medication.  (AR 465-66).  These reasons are supported by the record because Plaintiff's headaches were diagnosed as caused by rebound multiple times, (AR 298, 304), and because Plaintiff's blood twice tested negative for painkillers.  (AR 747, 752); see also Thomas v. Barnhart, 278 F.3d 947, 959 (9th Cir. 2002) (holding that a lack of candor about drug and alcohol usage carries over to descriptions of physical pain).

Second, the ALJ rejected Plaintiff's testimony about pain in her back, (AR 465), because her degenerative changes were consistent with age.  (AR 310-11, 360, 392, 720).  Furthermore, radiograph studies and physical examinations of Plaintiff's back show nothing significantly wrong.  (Id.).  This reason is supported by the record because Plaintiff's neurological examinations were normal.  (AR 276, 279, 283, 284, 298, 300-01, 303, 306, 312).

Third, the ALJ observed that Plaintiff's hypertension and kidney disease were resolved by medication.  (AR 465).  The record demonstrates that Plaintiff's kidney disease and hypertension have improved.  (AR 367).  Her blood pressure is now under control.  (AR 654).  Her kidney

disease has not progressed, as the most recent renal sonogram was normal. (AR 658).

Fourth, the ALJ discredited Plaintiff's history of right shoulder bursitis/tendinitis because Plaintiff has had no recent treatment. (AR 465). The record indicates that Plaintiff's last treatment was limited to physical therapy in December 2007. (AR 356-58). Her X-rays were normal. (AR 359). She declined a cortisone injection. (AR 358); see also Smolen, 80 F.3d at 1284 (holding that failure to seek treatment may factor into ALJ's credibility determination).

Fifth, the ALJ rejected Plaintiff's complaints of chest pain because her heart examinations have revealed nothing except mild sinus tachycardia. (AR 465). The record confirms the ALJ's finding. (AR 229-30, 232, 235, 278-79, 365-67, 392-93).

Sixth, with respect to Plaintiff's hands, the ALJ determined that Plaintiff underwent left carpal tunnel release but rejected Plaintiff's complaints of no improvement because medical evidence showed improvement. (AR 465). The record indicates that Plaintiff's condition has improved because her hands have increased functionality. (AR 735, 854).

Her carpal tunnel syndrome improved to be mild/borderline on the left and mild on the right. (AR 854). The conflict between her testimony and the medical evidence undermines her credibility. See Smolen, 80 F.3d at 1284 (holding that inconsistent statements are grounds to discredit testimony).

Seventh, the ALJ properly considered Plaintiff's inconsistent statements and actions when discrediting Plaintiff's testimony. For instance, Plaintiff's testimony regarding her headaches is inconsistent with two blood tests. (AR 747, 752). Furthermore, Plaintiff took more Norco than prescribed after Dr. Khayali specifically recommended that she decrease her use of narcotics. (Compare AR 508-09 with AR 304, 854). Additionally, Plaintiff's testimony that she does not use drugs, (AR 508), is inconsistent with her use of the illegal hallucinogen Phencyclidine (PCP) in September 2010, (AR 752), and her "frequently" asking for Dilaudid at the hospital. (AR 298). Similarly, Plaintiff was inconsistent regarding her income because she testified that she charged between $50 and $175 braiding hair for three clients two days a week in 2008 and 2009, which the ALJ correctly calculated to be $1200 per month at minimum, but Plaintiff testified that she made only $500. (AR 501-03). This testimony also conflicts her testimony from the first ALJ hearing in October 2008 that she had stopped working in 2000, (AR 33) and could not work or stand for more than ten minutes. (AR 45).

Finally, additional evidence supports the ALJ's rejection of Plaintiff's testimony. At her orthopedic consultation in May 2007, Plaintiff refused to move her neck or back but was able to get onto the examination table and gave way with every muscle tested. (AR 260-63); see also Thomas, 278 F.3d at 959 (holding that failures to give maximum effort during physical capacity examinations "argue strongly as to lack of credibility"). Plaintiff's testimony regarding her inability to work is less credible because "her earning record indicates no lifelong interest or attachment to work." (AR 18); see also Thomas, 278 F.3d at

959 (holding that having "shown little propensity to work in her lifetime" negatively affects credibility regarding inability to work).

Thus, substantial evidence in the record supports the ALJ's rejection of Plaintiff's testimony. Based on the foregoing, the Court finds that the ALJ provided clear and convincing reasons for rejecting Plaintiff's subjective pain. Accordingly, no remand is required.

B. **The ALJ Provided Reasons Germane To Ms. Quinn In Discrediting Her Lay Witness Testimony**

Plaintiff contends that the ALJ did not properly consider lay witness testimony. (Mem. Supp. Compl. at 7-15). Specifically, Plaintiff argues that the ALJ improperly discredited the statements of Plaintiff's aunt, Ms. Quinn, with respect to the extent of Plaintiff's pain and inability to function. (Id.). The Court disagrees with Plaintiff's contention.

In determining whether a claimant is disabled, lay witness testimony "cannot be disregarded without comment." Molina v. Astrue, 674 F.3d 1104, 1115 (9th Cir. 2012) (emphasis, internal quotations and citations omitted); 20 C.F.R. §§ 404.1513(d)(4) & (e), and 416.913(d)(4) & (e). The ALJ may discount the testimony of lay witnesses only if she gives "reasons that are germane to each witness." Dodrill v. Shalala, 12 F.3d 915, 919 (9th Cir. 1993); see also Lewis v. Apfel, 236 F.3d 503, 511 (9th Cir. 2001) ("Lay testimony as to a claimant's symptoms is competent evidence that an ALJ must take into account, unless he or she expressly determines to disregard such testimony and gives reasons

germane to each witness for doing so." (citations omitted)).   If the ALJ's ultimate credibility determination and reasoning are adequately supported by substantial evidence in the record, no remand is required.   Id. (citing Batson v. Comm'r of the Soc. Sec. Admin., 359 F.3d 1190, 1195-97 (9th Cir. 2004)).

The ALJ gave four reasons to give less weight to Ms. Quinn's testimony: (1) her statements are not supported by the clinical or diagnostic medical evidence; (2) her testimony is a repeat of plaintiff's subjective complaints; (3) Ms. Quinn has a financial interest in Plaintiff's receiving benefits; and (4) she is not a medical professional.   (AR 466).

### 1.   The ALJ Properly Determined That Ms. Quinn's Testimony Was Not Supported By The Medical Evidence

The ALJ's most important reason to discredit Ms. Quinn's testimony was that "her statements are not supported by the clinical or diagnostic medical evidence that is discussed more thoroughly herein."   (AR 466).   Plaintiff argued that this was an improper reason to dismiss Ms. Quinn's testimony because (1) it is a "vague, conclusory statement" and (2) "the very nature of excess pain and symptom testimony is that it is testimony unsupported by medical evidence."   (Mem. Supp. Compl. at 14-15).   The Court disagrees.

Regarding the ALJ's statement, the ALJ was not vague or conclusory because she referenced her previous analysis of Plaintiff's impairments, which was very specifically tied to the medical record.   (AR 466).

25

Regarding Plaintiff's hands, for instance, the ALJ addressed Ms. Quinn's testimony that Plaintiff's condition is gradually deteriorating, (AR 539), with Dr. Khayali's records showing improvement. (AR 461, 854-56). Inconsistency with medical evidence is a valid reason for rejecting a lay witness' testimony. Bayliss v. Barnhart, 427 F.3d 1211, 1218 (9th Cir. 2005) (citing Lewis v. Apfel, 236 F.3d 503, 511 (9th Cir. 2001) ("One reason for which an ALJ may discount lay testimony is that it conflicts with medical evidence.")).

Similarly, Ms. Quinn testified that Plaintiff's feet bother her. (AR 544). The ALJ addressed this point by saying, "there is no evidence of [this] condition." (AR 465). Ms. Quinn's statement was not supported by objective medical evidence. The ALJ properly discredited this testimony.

**2.   The ALJ Properly Found That Ms. Quinn's Testimony Repeated Plaintiff's Subjective Complaints Which The ALJ Provided Clear and Convincing Reasons To Reject**

The ALJ's second reason for discrediting Ms. Quinn's testimony is that "[h]er testimony appears to be no more than a parroting of the subjective complaints already testified to by the complainant. As discussed above, the complainant's credibility is highly suspect, and the repetition of the complainant's subjective complaints through her aunt does not make them any more credible." (AR 466). Plaintiff contends that this was error because (1) lay witnesses have personal knowledge and have to rely to some extent on communications with

26

plaintiffs and (2) lay witness observations are valuable corroboration. (Mem. Supp. Compl. at 9-10). The Court disagrees.

When an ALJ provides clear and convincing reasons for rejecting plaintiff's own subjective complaints, and lay witness testimony is similar to such complaints, it follows that the ALJ also gave germane reasons for rejecting the lay witness's testimony. Valentine v. Comm'r Soc. Sec. Admin., 574 F.3d 685, 694 (9th Cir. 2009). In this case, the ALJ provided clear and convincing reasons for discrediting Plaintiff's testimony, as discussed above.

### 3. The ALJ Correctly Found That Ms. Quinn Has A Financial Interest In Plaintiff's Receiving Benefits

The ALJ's third reason for discrediting Ms. Quinn's testimony is that she "has a financial interest in seeing the complainant receive benefits in that they live in adjoining duplexes, and the aunt helps care for the complainant and her daughters, per her testimony." (AR 466). Plaintiff contends that rejection based on familial and financial interest is not germane to Ms. Quinn because "it is common that the people closest to a claimant are also a source of income for the claimant." (Mem. Supp. Compl. at 12). It would be improper for the ALJ to reject Plaintiff's aunt's testimony regarding her pain and symptoms solely on the grounds that she was Plaintiff's aunt. Regennitter v. Comm'r of the Soc. Sec. Admin., 166 F.3d 1294, 1298 (9th Cir. 1999) (quoting Smolen, 80 F.3d 1289). However, bias and financial motive may serve as legitimate reasons to discredit the testimony of a third party when those reasons are supported by substantial evidence and when they

are not the sole reason for rejecting the lay witness testimony.  <u>Greger</u> <u>v. Barnhart</u>, 464 F.3d 969, 972 (9th Cir. 2006).  In this case, the reason may function as support for the ALJ's rejection of Ms. Quinn's testimony, when considered with all of the record evidence.

### 4.   Ms. Quinn Is Not A Medical Professional

The ALJ's fourth reason for discrediting Ms. Quinn's testimony is that she "is not a medical professional and as a lay witness, is not competent to make a diagnosis or argue the severity of the claimant's symptoms in relationship to the claimant's ability to work." (AR 466). Plaintiff argues that because lay witnesses testify only to personal knowledge and observations, professional expertise is not required. Mem. Supp. Compl. at 10-11).  Though a medical professional's opinion is entitled to greater weight, Plaintiff is correct that this reason would not, by itself, discredit Ms. Quinn's testimony.  However, when considered in light of the record as a whole, the Court finds that the ALJ's rejection of Ms. Quinn's testimony does not require remand.

\\
\\
\\
\\
\\
\\
\\
\\
\\
\\

## VII.

### CONCLUSION

Consistent with the foregoing, IT IS ORDERED that: Judgment be entered AFFIRMING the decision of the Commissioner and dismissing this action with prejudice.   IT IS FURTHER ORDERED that the Clerk of the Court serve copies of this Order and the Judgment on counsel for both parties.

DATED: July 18, 2012.

/S/

_____
SUZANNE H. SEGAL
UNITED STATES MAGISTRATE JUDGE

29